IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:12-CR-434 |
| | ) | |
| ELRODA SHAVAYA THOMPSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The defendant-inmate, Elroda Thompson, filed a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Mr. Thompson asserts that a sentence reduction is appropriate based on his risk of COVID-19 complications and based on changes in case law about the Armed Career Criminal Act (ACCA) enhancement. Because Mr. Thompson has not shown that extraordinary and compelling reasons exist or that the sentencing factors support a sentence reduction, the motion will be denied.

**I.     Background**

In 2013, Mr. Thompson pled guilty to possession of a firearm by a felon pursuant to a written plea agreement. *See* Minute Entry 05/31/2013; Doc. 1; Doc. 19. After finding that the ACCA applied, the Court sentenced him to the statutory minimum of 180 months in prison to be followed by three years of supervised release. Doc. 30 at 2–3. Mr. Thompson has been in custody for almost eleven years. *See* Doc. 107-1 at 2 (time served of 10 years 6 months as of January 25, 2023). His current release date is April 22,

2026, and he is housed at Oklahoma City FTC. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 7, 2023).

In July 2020, Mr. Thompson filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), asking the Court to reduce his sentence based on the pandemic and his medical conditions. Doc. 74. The Court denied the motion, concluding that Mr. Thompson had neither shown extraordinary and compelling reasons nor addressed the § 3553(a) factors. Doc. 75. Because Mr. Thompson also stated that he was making a claim based on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the Court appointed counsel to assist him in evaluating his potential rights and if appropriate to seek permission from the Fourth Circuit to file a second or successive § 2255 petition. Doc. 75 at 4–5. In June 2022, the Fourth Circuit denied Mr. Thompson's motion for an order authorizing the district court to consider a second or successive § 2255 petition. Doc. 103.

In February 2023, Mr. Thompson filed the pending motion for compassionate release, Doc. 106, a motion for leave to amend and supplement, Doc. 107, and various supplements. Docs. 107-1, 107-2, 107-3, 108, 110. He contends that a sentence reduction is appropriate because of his increased risk of COVID-19 complications based on his health conditions, *see* Doc. 107 at 3–9, and because of changes in case law to the application of the ACCA enhancement. *See* Doc. 106 at 9–12. The Court ordered the government to respond if it objected on any ground and ordered the Probation Office to file a supplemental report. Doc. 111. The government filed a response in opposition, Doc. 116, and the Probation Office filed a supplement. Doc. 115. After some delays

2

caused when Mr. Thompson did not receive the government's brief, *see* Docs. 118, 119, Text Order 06/02/2023, Mr. Thompson filed a reply brief.  Doc. 121.

## II.      Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences.  *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart." (cleaned up)); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022).  A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so.  *See* 18 U.S.C. § 3582(c).  Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government.  *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).  Here, the government does not dispute that Mr. Thompson has satisfied the exhaustion requirement.  Doc. 116 at 5–6; *see* Doc. 106 at 22.

Section 3582(c)(1)(A) also requires that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission,[1] and that the relevant § 3553(a)

---

[1] There are currently no policy statements in effect applicable to motions filed directly by defendants.  *See McCoy*, 981 F.3d at 282.  In April 2023, the Sentencing Commission voted to amend the policy statements and make them applicable to defendant-filed motions.  *See Sentencing Guidelines for United States Courts*, 88 Fed. Reg. 28254 (May 3, 2023), https://www.govinfo.gov/content/pkg/FR-2023-05-03/pdf/FR-2023-05-03.pdf.  If Congress does not act, the amendments will become effective on November 1, 2023.  *Id.*

sentencing factors do not counsel against early release. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). Even if the court finds that extraordinary and compelling reasons support release, the court in its discretion may deny a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at 186.

## A. Extraordinary and Compelling Reasons

### 1. Health Conditions and COVID-19

Mr. Thompson asserts that extraordinary and compelling reasons exist because he is "particularly susceptible to severe outcomes given [his] prior COVID-19 infection . . . coupled with the ongoing risk posed by ever evolving variants." Doc. 107 at 10. Mr. Thompson says that he has "health issues stemming from injuries sustained in the BOP" and that he has "had 4 major surgeries" while in custody. *Id.* at 3. He has submitted evidence showing that he tested positive for COVID-19 in August 2022 and received follow-up care after a surgery. Doc. 108. In his reply brief, he says that he contracted COVID-19 in July 2023, that he has permanently lost his sense of smell and taste, Doc. 121 at 3, and that he has a cyst on his liver. *Id.* at 4.

COVID-19 may be a relevant factor in finding extraordinary and compelling circumstances under § 3582 but typically only when combined with age, severe health issues, and/or inadequate medical care. *See, e.g.*, *United States v. Norris*, 458 F. Supp. 3d 383, 386 (E.D.N.C. 2020) (age and health conditions, when considered in light of the COVID-19 pandemic, constituted extraordinary and compelling circumstances); *Woodard v. United States*, 469 F. Supp. 3d 499, 502–03 (E.D. Va. 2020) (collecting cases

4

and holding same); *United States v. Malone*, 57 F.4th 167, 175 (4th Cir. 2023) (reversing district court's denial of compassionate release after finding that a defendant's age, "numerous health conditions," and "severe risk" of COVID-19 constituted extraordinary and compelling circumstances).

The current policy statements do not contain a specific statement addressing infectious diseases, but the proposed policy statements likely to go into effect later this year[2] provide that extraordinary and compelling reasons exist if:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> (iii) such risk cannot be adequately mitigated in a timely manner.

*See Sentencing Guidelines for United States Courts*, 88 Fed. Reg. 28254–55 (May 3, 2023) (proposed U.S.S.G § 1B1.13(b)(1)(D)), https://www.govinfo.gov/content/pkg/FR-2023-05-03/pdf/FR-2023-05-03.pdf.

Here, Mr. Thompson's concerns about COVID-19 do not rise to extraordinary and compelling circumstances. The BOP reports that at Oklahoma City FTC,[3] there are no

---

[2] *See supra* n.1.
[3] While his motion was pending, Mr. Thompson was housed at USP Thomson, *see* Doc. 107 at 2, and USP Pollock, *see* Doc. 118 at 2, but he is now housed at Oklahoma City FTC. *See supra* page 2. The number of COVID-19 cases at Thomson and Pollock are minimal to none. *See Inmate COVID-19 Data*, Fed. Bureau of PRISONS,

5

open cases of COVID-19 and just under half of the inmates have been fully inoculated

since the start of the pandemic. *See Inmate COVID-19 Data*, FED. BUREAU OF PRISONS,

https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (July 5, 2023). Mr.

Thompson says that he is "fully vaccinated" for COVID-19. Doc. 107 at 3. He has

submitted minimal medical records, *see* Doc. 108, and does not assert that BOP is

providing inadequate care for his medical conditions.

Even if the Court considers the proposed amendments, Mr. Thompson has not

shown that Oklahoma City FTC is affected or at imminent risk of being affected by an

ongoing outbreak of COVID-19 or a public health emergency or that the BOP cannot

adequately mitigate the risks in a timely manner. Nor does he meet the requirements

established in other provisions of the proposed policy statement addressing medical

circumstances. *See Sentencing Guidelines for United States Courts*, 88 Fed. Reg. 28254

(May 3, 2023) (proposed U.S.S.G. § 1B1.13(b)(1)(A)–(C)).

Mr. Thompson has not shown that his COVID-19 risks, his health conditions, or

both taken together constitute extraordinary and compelling circumstances justifying a

sentence reduction.

**2. ACCA Enhancement**

Mr. Thompson also asserts that extraordinary and compelling circumstances exist

because of changes in case law to the ACCA enhancement. He says two of his prior

---

https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (July 5, 2023) (showing two open cases at Thomson and zero at Pollock).

convictions for second-degree burglary no longer count as separate predicate felonies after the Supreme Court's decision in *Wooden*. Doc. 106 at 7–8, 10–12; Doc. 121 at 10–12; *see Wooden v. United States*, 142 S. Ct. 1063 (2022). Without the ACCA enhancement, Mr. Thompson would not have been subject to the statutory minimum of 15 years under 18 U.S.C. § 924(e), and his guideline range would have been 92 to 115 months. Doc. 115 at 7.

To the extent Mr. Thompson seeks a sentence reduction because of an error in the calculation of his guideline range, *see* Doc. 106 at 8 (contending his "ACCA designation is now erroneous"), the motion will be denied. The compassionate release statute is not the appropriate mechanism to challenge an alleged guidelines error. *See Ferguson*, 55 F.4th at 270; *United States v. Brewster*, No. 16-CR-220, 2023 WL 2656564, at *2 (W.D.N.C. Mar. 27, 2023) ("Defendant's assertion that he was improperly sentenced in light of *Wooden* is a challenge to his sentence for which a motion to vacate under 28 U.S.C. § 2255 is the exclusive remedy." (cleaned up)).

But to the extent Mr. Thompson contends that *Wooden* has resulted in a disparity between the sentence he received and the sentence he would receive today, *see* Doc. 106 at 12 (contending a sentencing disparity exists), Doc. 121 at 4 (contending same), this argument is appropriate to consider in a motion for compassionate release. *See McCoy*, 981 F.3d at 274–75 (noting statutory changes in mandatory minimums that occur after sentencing and do not apply retroactively are an appropriate basis for a sentence reduction, when combined with other factors); *United States v. Owens*, No. 10-CR-60, 2022 WL 17821560, at *5 (W.D. Va. Dec. 20, 2022) (noting a compassionate release

7

motion based on change in case law and not an attack on an original conviction and sentence is not barred by *Ferguson*).

The proposed policy statements provide that changes in the law may qualify as extraordinary and compelling reasons in some circumstances. Specifically,

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Sentencing Guidelines for United States Courts*, 88 Fed. Reg. 28255 (May 3, 2023) (proposed U.S.S.G. § 1B1.13(b)(6)).

### a. The ACCA and *Wooden*

Congress enacted the ACCA to protect society from "those who commit a large number of fairly serious crimes as their means of livelihood" because those people "are especially likely to inflict grave harm when in possession of a firearm." *Wooden*, 142 S. Ct. at 1074 (cleaned up). The "statute mandates a 15-year minimum sentence for unlawful gun possession when the offender has three or more prior convictions for violent felonies like burglary committed on occasions different from one another." *Id.* at 1067 (cleaned up); *see* 18 U.S.C. § 924(e)(1).

Before *Wooden*, there was a circuit split on how to interpret the "occasions" clause. *Wooden*, 142 S. Ct. at 1068. Some circuits held that crimes occurred on different occasions if they took place "sequentially rather than simultaneously," and other circuits

8

"undert[ook] a more holistic inquiry, considering not merely the precise timing but also other circumstances of the crimes." *Id.* at 1068. In *Wooden*, the Supreme Court adopted the latter approach, finding that a multi-factored test is more appropriate. *Id.* at 1069–71. While recognizing that "a range of circumstances may be relevant," it specifically mentioned the following factors: (1) whether the defendant "committed [the offenses] close in time, in an uninterrupted course of conduct;" (2) "[p]roximity of location;" and (3) whether the offenses "share[d] a common scheme or purpose." *Id.* at 1071. It noted that "a single factor—especially of time or place—can decisively differentiate occasions." *Id*. It held that the defendant's ten burglary convictions counted as one predicate felony because the crimes—break-ins on the same date of different storage units within one storage facility—"all took place at one location" during "a single uninterrupted course of conduct." *Id*.

### b. Whether *Wooden* Has Caused a "Gross Disparity"

Mr. Thompson received the ACCA enhancement based on three prior convictions for second-degree burglary. *See* Doc. 65 at ¶ 30.[4] He committed the first burglary at one residence on March 16, 2000, from 2:45 a.m. to 3:30 a.m., *see id.*, Doc. 23-1, with two accomplices. *See* Docs. 26-1, 26-2. He committed the second burglary on the same night with the same two accomplices but at a different residence, between 3:00 a.m. to 4:30

---

[4] The Court adopted the presentence investigation report, Doc. 65, with changes not relevant here. *See* Doc. 66 at 1 (reflecting a change in the offense level).

9

a.m.  Doc. 65 at ¶ 30; Doc. 23-2; Docs. 26-1, 26-2.  And he committed the third burglary

a few days later, on March 19, 2000.  Doc. 65 at ¶ 30.

At sentencing, the Court applied the five-factor test then in use in the Fourth

Circuit[5] to determine whether Mr. Thompson committed the first two burglaries on

different occasions.  *See* Doc. 43 at 22–24.  It concluded that they did, finding that the

crimes involved different victims, occurred in different geographic locations, and did not

overlap in time completely.  *Id.*  Mr. Thompson appealed.  Doc. 31.  Applying the same

test, the Fourth Circuit affirmed.  *See* Doc. 50.

Mr. Thompson asserts that *Wooden* "struck down" the five-factor test applied at

his sentencing and on appeal.  Doc. 106 at 7.  But the Fourth Circuit has recognized that

*Wooden* is consistent with its previous multi-factor approach.  *See United States v.*

*Brown*, 67 F.4th 200, 208 (4th Cir. 2023) ("*Wooden* is largely consistent with *Thompson*,

as we noted in *Thompson* that several factors are relevant to the different occasions

inquiry, chief among them the date and location of an offense." (cleaned up)); *United*

*States v. Daniels*, No. 21-4171, 2022 WL 1135102, at *1 (4th Cir. 2022) (per curiam)

(unpublished) (noting that "*Wooden* is consistent with *Letterlough* and *Thompson*");

*United States v. Smith*, No. 20-4102, 2022 WL 2826187, at *2 (4th Cir. 2022) (per

curiam) (unpublished) (noting that timing remains one of many relevant factors

post-*Wooden*); *United States v. Dudley*, No. 22-4037, 2023 WL 2597601, at *1 (4th Cir.

---

[5] *See United States v. Carr*, 592 F.3d 636, 644–45 (4th Cir. 2010); *United States v.*
*Letterlough*, 63 F.3d 332, 335–36 (4th Cir. 1995); *United States v. Span*, 789 F.3d 320, 328 (4th
Cir. 2015); *United States v. Thompson*, 421 F.3d 278, 285 (4th Cir. 2005).

2023) (per curiam) (unpublished) (noting that the *Wooden* factors are similar to the

factors in the Fourth Circuit's test). Then as now, courts apply a "multi-factored" test in

which "a range of circumstances may be relevant." *Wooden*, 142 S. Ct. at 1070–71.

Here, the sentencing court and the Fourth Circuit on direct appeal applied a

multi-factored approach and explicitly considered two of the factors enumerated by the

Supreme Court in *Wooden*, timing and proximity of location. *See id.* at 1071. The

burglaries occurred close in time, but they involved different victims at different

locations. And, unlike the defendant in *Wooden*, Mr. Thompson had time in between the

crimes to evaluate his decisions such that he did not engage "in an uninterrupted course

of conduct." *Wooden*, 142 S. Ct. at 1071. As this Court and the Fourth Circuit have

previously explained, the first two burglaries occurred on different occasions. *See* Doc.

43 at 22–23; Doc. 50 at 10–11.

Mr. Thompson has not shown extraordinary and compelling circumstances

because no gross sentencing disparity exists. The *Wooden* test supports the Court's

finding that the burglaries occurred on different occasions, and the application of the

ACCA enhancement remains appropriate.

## B. Sentencing Factors

Even if Mr. Thompson has shown extraordinary and compelling reasons, the

§ 3553(a) factors do not support a sentence reduction.

The need to reflect the seriousness of the offense weighs against a sentence

reduction. Mr. Thompson was arrested for a firearm charge after he pointed the firearm

at someone and threatened to kill him. Doc. 65 at ¶¶ 9, 11. When confronted by law

11

enforcement, he approached the officer "with balled fists" and refused to stand down

until law enforcement pointed a taser in his direction.  *See id.* at ¶ 10.[6]

A longer sentence also provides more appropriate protection for the public.  Even

without the ACCA enhancement, Mr. Thompson reached criminal history category V, *id.*

at ¶ 38, with prior convictions for second degree assault, *id.* at ¶ 29, multiple thefts, *id.* at

¶ 30, and a state firearm felony.  *Id.* at ¶ 34.  While in custody, Mr. Thompson has

received numerous disciplinary infractions, including infractions for possession of

dangerous weapons, threatening bodily harm, destruction of property, and possession of

drugs/alcohol.  Doc. 106 at 27–28; Doc. 117; Doc. 115 at 1–3.  Mr. Thompson's criminal

history and inability to follow rules make a longer sentence necessary.

While Mr. Thompson contends that a sentence reduction would "avoid

unwarranted sentencing disparities," Doc. 106 at 19, a sentence reduction here would

increase unwarranted sentencing disparities.  Granting a reduction would result in his

sentence being significantly lower than the sentences for other defendants with similar

records who received the 15-year statutory minimum under the ACCA.

The Court appreciates that while in custody Mr. Thompson has participated in

educational programs, Doc. 106 at 23, Doc. 107-3, as well as various psychological and

---

[6] Mr. Thompson contends that the Court should not consider these facts in evaluating his motion because he "was never convicted of any such offense."  Doc. 121 at 12.  But he did not object to these facts at sentencing, *see* Doc. 65 at 21, and the Court adopted them as stated in the PSR.  *See* Doc. 66 at 1.  In evaluating an appropriate sentence, it is always appropriate to consider the surrounding facts, as criminal conduct does not occur in a vacuum.  *See Concepcion v. United States*, 142 S. Ct. 2389, 2398 (2022) ("Federal courts historically have exercised . . . broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them.  That discretion also carries forward to later proceedings that may modify an original sentence.").

12

wellness programs, Doc. 106 at 24–26, 29–30, Doc. 110 at 2–3, and that he has a release plan. Doc. 107 at 11 (asserting that he would live with his daughter and plans to work); Doc. 115 at 1 (Probation's supplement approving of release plan). But these efforts do not outweigh the seriousness of the offense, his record, the danger he presents to the public, the need to provide adequate deterrence, and the need to avoid unwarranted sentencing disparities.

## III. Conclusion

Mr. Thompson has not shown extraordinary and compelling circumstances and the § 3553(a) factors do not support a sentence reduction. His motion for compassionate release will be denied.

It is **ORDERED** that:

1. The defendant's motion for leave to amend and supplement the motion for compassionate release, Doc. 107, is **GRANTED**.

2. The defendant's motion for compassionate release, Doc. 106, as amended and supplemented, Docs. 107, 108, 110, is **DENIED**.

This the 11th day of July, 2023.

_____
UNITED STATES DISTRICT JUDGE

13